IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73,<br>    Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTESS OF THE UNIVERSITY OF ILLINOIS,<br>    Defendant. | Case No. 22-cv-2099 |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Motions for Summary Judgment filed by Plaintiff, Service Employees International Union, Local 73, and Defendant, The Board of Trustees of the University of Illinois. (Docs. 32, 33).

I.   PROCEDURAL BACKGROUND

Plaintiff alleges Defendant restricts speech in violation of the First Amendment by prohibiting public comments during public board meeting ("Board Meetings") on issues under negotiation as part of the University of Illinois' collective bargaining process ("the Restriction"). Plaintiff filed suit alleging the Restriction violates the First and Fourteenth Amendments and the Illinois Open Meetings Act ("OMA"). (Doc. 1). In 2023, the Court dismissed the OMA claim under sovereign immunity and determined the public comment portions of Board Meetings are limited public forums for First Amendment purposes. (Doc. 17).

## II.    FACTUAL BACKGROUND[1]

Plaintiff is a labor union representing more than 37,000 workers in Illinois and Indiana. At the University of Illinois, Plaintiff is the exclusive bargaining representative of workers with certain job classifications including culinary, food service, building services, laundry, and sanitation. (Doc. 35 at ¶ 5). Defendant is the thirteen-member governing body at the University of Illinois system, which educates over 90,000 students a year and employs over 25,000 faculty and staff. (Doc. 33 at ¶¶ 1, 3).

Defendant holds half-day Board Meetings open to the public every other month. (*Id.* at ¶¶ 7–8). Thirty minutes of each Board Meeting are reserved for public comment. (*Id.* at ¶ 10). As of 2022, six comments were allowed per meeting with each speaker allotted five minutes to present (*Id.* at ¶ 22). Defendant is not required to respond to public commenters and usually listens without engaging with the speakers. (Doc. 37 at ¶ 1). Public comment periods are governed by Defendant's Procedures Governing Appearances Before the Board of Trustees ("Comment Procedures"). (Doc. 35 at ¶¶ 12–13). Some formalized version of these procedures has existing since 1994. (*Id.* at ¶ 12). Section 1 of the Comment Procedures provides as follows:

> **Requests to address the Board**: Requests to appear before the Board to make comments to or ask questions of the Board must be received by the Secretary in writing no later than three business days before the Board meeting at which the individual wishes to speak. The Secretary will review this request and notify the person making the request whether he/she may

---

[1] Unless otherwise noted, the factual background of this case is drawn from the undisputed facts as conceded to the parties' statements of material facts; their responses to each other's statements of material facts and additional materials facts; their replies to each other's additional material facts; and exhibits to the filings. Exhibit citations are used for facts the Court finds are undisputed from the summary judgment record.

give public comment at the next meeting. The request should set out clearly the nature of the subject matter to be presented and must relate to matters within the jurisdiction of the Board of Trustees. In making a request to appear before the Board, individuals must give their names and any relevant title or affiliation. Substitute speakers will not be permitted.

(*Id.* at ¶ 15)

Section 3 contains the challenged Restriction and further provides:

**Scheduling of speakers:** When the number of requests to address the Board at a given session exceeds the time available, requests will be approved based on the date the written request was received by the Secretary of the Board. In addition, preference will be given to subject matters that relate to the agenda for the relevant Board meeting and to avoid repetitiveness. Finally, the Board will not hear presentations or entertain questions on the following topics: *issues under negotiation as part of the University's collective bargaining process*; statements concerning the private activities, lifestyles or beliefs of individuals employed by or associated with the University; grievances of individual students or employees; proposals or bids for contracts; or, litigation involving the University.

(*Id.* at ¶ 16) (emphasis added).

In 2022, three union members sitting on Plaintiff's bargaining committee asked to speak during the public comment period of an upcoming Board Meeting. (*Id.* at ¶¶ 8, 45). Each member emailed timely written requests to the Board Secretary consistent with Section 1 of the Comment Procedures requesting to discuss the "treatment and unfair negotiations here at UIUC," "the state of labor relations at the university," and "the concerns of building service workers at UIUC." (*Id.* at ¶¶ 22, 45–49). The next day, using language identical to Section 3 of the Comment Procedures, the Board Secretary denied all three requests because the proposed comment topics dealt with "issues under negotiation as part of the University's collective bargaining process." (*Id.* at ¶ 50).

III. **DISCUSSION**

A. **Legal Standard**

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. *Carroll v. Lynch,* 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is only material if its resolution might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason,* 542 F.3d 545, 550 (7th Cir. 2008). Summary judgment is not appropriate if a reasonable jury could just as easily return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248. "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Reh.ab. Ctr., LLC,* 464 F.3d 659, 664 (7th Cir. 2006) (internal quotation marks omitted).

B. **Analysis**

The Court previously ruled the public comment period of a Board Meeting is a limited public forum where restrictions on speech must be "viewpoint-neutral and reasonable in light of the forum's purpose." (Doc. 17); *see also Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 470 (2009) ("[A] government entity may create a forum that is

limited to use by certain groups or dedicated solely to the discussion of certain subjects. In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral.") (internal citations omitted); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 121 (2001) ("When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech."). Plaintiff's First Amendment challenge to the Restriction is facial, not as-applied, and Plaintiff concedes the Restriction is viewpoint-neutral. Therefore, the Court must only determine whether the Restriction is reasonable in light of the public comment period's purpose.

### (1) Purpose of the Public Comment Period

Oftentimes, limited public forums are created for discrete, specific purposes, which can fast track the First Amendment analysis. For example, in *Cogswell v. City of Seattle*, a forum was created only for candidates to introduce themselves. 347 F.3d 809, 817 (9th Cir. 2003). And in *Perry Education Association v. Perry Local Educators' Association*, a school mail system was created to facilitate internal school communications to teachers and occasional communications by certain outside civic organizations. 460 U.S. 37, 48 (1983). Conversely, public comment periods at Board Meetings serve broader purposes. Section 11 of the University of Illinois Act ("UIA") mandates public comment at Board Meetings, stating that "[a]t each regular and special meeting that is open to the public, members of the public and employees of the University shall be afforded time, subject to reasonable constraints, to make comments to or ask questions of the Board." 110 ILCS

305/11. Section 11's plain language suggests the public comment period exists to give the public and employees an opportunity to bring questions and concerns to Defendant subject to "reasonable constraints" imposed by Defendant. No cases appear to elaborate on this statutory text and legislative history provides scant additional insight. *See* Illinois Senate Transcript, 2000 Reg. Sess. No. 89 (indicating no discussion on the public comment requirement).

Plaintiff argues the Legislature intended to give employees an opportunity to address concerns to Defendant that impact them as employees as evidenced by the public comment requirement for "members of the public and employees of the University." 110 ILCS 305/11. However, this right is not absolute and is still subject to "reasonable constraints." *Id*. Furthermore, the statute does not elevate employee comments to a higher stature than those of the public.

Defendant contends the public comment period serves "to provide an opportunity for interested groups and individuals to make presentations in person at meetings of the Board in compliance with the Illinois Open Meetings Act." (Doc. 33 at 38). Like UIA, the relevant OMA language is also broad. Under Section 2.06(g) of OMA, "[a]ny person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." 5 ILCS 120/2.06(g). States courts have said "Section 2.06(g) inherently recognizes that there can be rules, and it does not confer a right on plaintiff to be able to speak at all meetings about all subjects." *Eberhardt v. Vill. of Tinley Park*, 2024 IL App (1st) 230139, ¶ 61. In *Eberhardt*, the court held the requirement that public comments

at a village's board meetings be germane to agenda items did not violate OMA. Rather, Section 2.06(g) "simply establishes that the [v]illage must allow public comments at board meetings to some extent." *Id.* at ¶ 62. Thus, the Court finds Section 2.06(g) does little to alter the purpose of public comment at Board Meetings as laid out in Section 11 of UIA.

### (2) Reasonableness of the Restriction

The next inquiry for the Court is to determine whether the challenged restriction is reasonable. The bar for reasonableness is low. *See Anderson v. Milwaukee Cty.*, 433 F.3d 975, 980 (7th Cir. 2006) ("[S]imple common sense is sufficient to uphold a regulation under reasonableness review.") (citing *United States v. Kokinda*, 497 U.S. 720, 734 (1990)). Courts have found restrictions on speech in limited public forums reasonable when they advance goals such as civility, decorum, relevance, and fairness to other speakers participating in the forum. (Doc. 17 at 18) (citation omitted). Courts have also concluded restrictions only need to be reasonable and "need not be the most reasonable or the only reasonable [restriction]." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985).

### (a) Risk Mitigation

Defendant argues the Restriction is reasonable because it helps mitigate legal and institutional risks. Under the Illinois Educational Labor Relations Act ("IELRA"), union representatives on the bargaining team are the exclusive representative of all employees in a collective bargaining unit. 115 ILCS 5/3(b). Educational employers are restricted from engaging with union members not on the bargaining team in any direct dealings on

collective bargaining issues. For example, the University cannot bypass the bargaining team and negotiate a deal on contract terms with a group of union members unhappy with their bargaining team's priorities—any such deal would be unlawful under the IELRA. *See Bd. of Educ. of Sesser-Valier Cmty. Unit Sch. Dist. No. 196 v. Illinois Educ. Lab. Rels. Bd.*, 250 Ill. App. 3d 878, 883 (4th Dist. 1993) ("[A]n educational employer violates the essential principle of collective bargaining when that employer bargains, or attempts to bargain, with an individual employee or employees with respect to wages, hours, and terms or conditions of employment."). It is in the best interest of both parties to prevent direct dealing as it undermines the collective bargaining process and could precipitate litigation.

Defendant argues the Restriction reduces the risk of direct dealing and/or allegations of direct dealing. This argument is true in that the Restriction precludes union members from attempting to directly deal with Defendant using the public comment period at Board Meetings. Plaintiff contends Defendant exaggerates this legal risk and proposes an alternative solution to avoid direct dealing: keep quiet. Defendant cannot engage in unlawful bargaining during the public comment period if there is no dialogue. Plaintiff, however, underplays the scope of legal risks the Restriction addresses. The Restriction does more than prevent the outbreak of an impromptu back-and-forth bargaining session during Board Meetings. It also mitigates the risk of direct dealing allegations arising due to subsequent actions. For example, if Defendant silently listened to public comments from union members not on the bargaining team about a contentious

collective bargaining issue, that passive reception of information would not be direct dealing. However, if the University thereafter presented a collective bargaining proposal seemingly informed by those public comments and arguably catering to the union members who gave public comment, the issue of direct dealing is now a closer question as the proposal could be seen as an effort to bypass the bargaining team. Plaintiff concedes it would consult its legal team in such a situation and similar situations have prompted litigation elsewhere. (Doc. 36 at ¶ 26); *City of Madison*, 429 U.S. at 172 (deciding a case filed after a teacher opposed part of his union's bargaining proposal at a school board meeting and the board later approved the proposal save what the teacher opposed).

Furthermore, whether Plaintiff's alternative solution for Defendant to simply keep quiet is, on balance, better than the Restriction is not a dispositive inquiry. The Court need not determine whether alternatives to the Restriction are better or whether the Restriction most effectively solves the problem Defendant says it was designed to address. If the Restriction is reasonable, it is permissible even if it is not the only or most reasonable solution. *Cornelius*, 473 U.S. at 808. To be sure, the Restriction does not fully eliminate the risk of direct dealing. As discussed further below, there are other avenues to reach Defendant that could be used to bypass the bargaining team. A partial solution to a problem can still be a reasonable one.

Plaintiff also argues the Restriction is too broad because "there is virtually no subject concerning the operation of the school system [here, university] that could not

also be characterized as a potential subject of collective bargaining." (Doc. 35 at 19) (quoting *City of Madison*, 429 U.S. at 176–77). That statement is true as applied to the underlying facts of *City of Madison*, but the Restriction here does not prohibit discussion of anything that could be a "potential subject of collective bargaining." Rather, it prohibits comments on "issues under negotiation as part of the University's collective bargaining process." The Restriction may have considerable scope—an average of ten to twenty negotiation processes are proceeding at any given time at the University—but it is not the blanket ban on employee issues Plaintiff makes it out to be. After all, union members speak at Board Meetings on matters related to labor relations with some frequency. (Doc. 36 at ¶ 29). The Court finds the Restriction's reach does not make it unreasonable.

Defendant argues hearing comments on issues under negotiation could still impede the bargaining process even if it does not violate the IELRA. Specifically, Defendant contends allowing such comments from union members not on the bargaining team[2] might spark controversy or spread confusion and misinformation, which could delay or otherwise undermine negotiations between Plaintiff and the University. Courts have found that "avoiding controversy" and "insuring peace" can support a speech restriction, albeit those cases concerned forums with narrower purposes than Board Meetings. *Cornelius*, 473 U.S. at 809–10 (quoting *Perry*, 460 U.S. at 52). Plaintiff may disagree with the Defendant's risk calculus but has not shown the mitigation of risk that

---

[2] If Defendant were to only prohibit union members not on the bargaining team from discussing issues under negotiation at Board Meeting, a court might find it an impermissible restriction on viewpoint. *See City of Madison*, 429 U.S. at 176–77 (finding a requirement unconstitutional that prohibited teachers, other than union representatives, from speaking on matters subject to collective bargaining at public meetings).

justification is unreasonable. Although Defendant's risk-mitigation argument alone shows the Restriction is reasonable, the Court, for the sake of thoroughness, addresses Defendant's other justifications below.

### (b) Germaneness

Next, Defendant argues the Restriction helps it focus public comment on topics germane to its activities and not outside activities like collective bargaining delegated to experts within the University. A considerable amount of Defendant's authority is delegated, as Defendant is a thirteen-member board governing a university system with over 90,000 students and more than 25,000 faculty and staff. Singling out one type of delegated activity to keep discussion "germane" to Defendant's activities is unpersuasive, especially considering other provisions in the Comment Procedures are better suited to and clearly designed for the task. Under the Comment Procedures, preference is given to nonrepetitive comments and subject matter related to the Board Meeting agenda. These provisions render the prohibition on issues under negotiation largely redundant as a mechanism to keep discussion germane to Defendant's activities. If issues under negotiation were not on the meeting agenda, comment on such issues could be denied in preference for other on-topic comments; and if issues under negotiation *were* on the meeting agenda, related comments would presumably be germane to Defendant's activities and exclusion on germaneness grounds would be inappropriate.

Defendant argues the Restriction is consistent with *Cornelius*, which concludes that "[t]he First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." 473 U.S. at 811. In *Cornelius*, the government excluded legal defense funds from a charity drive aimed at federal employees in part because their participation negatively impacted donation numbers and generated hundreds of complaints. *Id.* at 810–11. There, a purpose of the charity drive was, as one might expect, to raise money for charity. *Id.* Therefore, the government could exclude groups hindering the charity drive's effectiveness by causing declines in donations. But here, comments on issues under negotiation do not hinder the effectiveness of the public comment period's purpose in the same way, as the public comment period's purpose is not to exclusively hear discussion of non-delegated activities. If it were, Defendant would presumably not occasionally hear comments at Board Meetings on "world events . . . not directly related to the Board's actions." (Doc. 33 at 34). At times, hearing public comment on delegated issues could be consistent with the public comment period's purpose. Commenters could, for example, explain why Defendant should be more directly involved in areas of delegated authority. For these reasons, the Court is unpersuaded by Defendant's argument that the restriction is reasonable because it keeps public comments germane to Defendant's activities.

### (c) Time Management

There are around sixty collective bargaining agreements within the University of Illinois system and an average of ten to twenty negotiation processes are proceeding at

any given time. (Doc. 33 at ¶ 42; Doc. 35 at ¶ 29). Defendant receives "numerous" requests to speak on issues under negotiation and argues allowing presentations on these issues would cause a disproportionate amount of the public comment period to be taken up by these topics. The Court finds this argument unpersuasive. Defendant's reasoning is premised on an all or nothing approach—that eliminating the Restriction would open the floodgates to a sea of commenters who would monopolize the public comment period. This outcome could be easily avoided. To preserve public comment on a diversity of issues, Defendant could simply approve some but not all requests to speak on issues under negotiation. This balance could be achieved without revision of the Comment Procedures, which limited speakers to five-minutes in 2022 and states comment requests will be approved based on the date the request was received and "preference will be given to subject matters that relate to the agenda for the relevant Board meeting and to avoid repetitiveness." (Doc. 33 at ¶ 22; Doc. 35 at ¶ 15).

### (d) Alternative Channels of Communication

Defendant asserts the public may communicate with Defendant and university leadership through other channels. Courts have looked to the accessibility and quality of alternative channels of communication to help determine whether a restriction on speech is permissible. *See, e.g. Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000). Although an alternatives analysis is often done when scrutinizing speech restrictions of time, place, and manner in public forums, the analysis can also be helpful in the context of a limited public forums. *See Perry Educ. Ass'n*, 460 U.S. at 53 (finding the "reasonableness" of a

speech restriction to be "supported by the substantial alternative channels that remain open"); *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minnesota*, 109 F.4th 1033, 1042 (8th Cir. 2024) (finding a speech restriction in a limited public forum reasonable after finding alternative channels of communication remained open).

Here, Defendant lists other avenues of communication for Plaintiff, such as attending "listening sessions" hosted by the University; meeting in smaller settings with the University's collective bargaining leads; communicating directly with supervisors; emailing Defendant or writing Defendant a letter; and demonstrating outside Board Meetings, alone or in coordination with other labor unions. Plaintiff argues the alternative means of communication listed by Defendant are inadequate and different in kind from the opportunity to speak at Board Meetings. According to the Seventh Circuit, "[a]n adequate alternative does not have to be the speaker's first or best choice or one that provides the same audience or impact for the speech." *Gresham*, 225 F.3d at 906 (considering a city ordinance limiting panhandling in public places) (citations omitted). The available alternatives, however, "must be realistic" and a restriction on speech "cannot totally foreclose a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 518 (7th Cir. 2024) (quoting *Gresham*, 225 F.3d at 906–07).

Here, the alternatives open to Plaintiff are adequate. For example, the University regularly hosts listening sessions where employees present their employment concerns to university leadership and are free to share opinions about issues under negotiation.

(Doc. 37 at ¶ 5). In fact, when arguing that the Restriction does not mitigate legal risk, Plaintiff compared public comment at Board Meetings to an "innocuous 'listening session.'" (*Id.* at 17). Plaintiff argues the alternative channels are inadequate because a purpose of the public comment period is to allow university employees to address concerns to Defendant directly. However, Plaintiff overstates the limitation at issue. University employees can and do address concerns to Defendant directly at Board Meeting, just not concerns on issues under negotiation. The alternatives available to Plaintiff may not be its "first" choice or "provide[] the same audience or impact" as a public comment period, but Plaintiff has failed to show the alternatives are unrealistic or that the public comment restriction "totally foreclose[s]" Plaintiff's ability to reach Defendant. *Gresham*, 225 F.3d at 906–07 (citations omitted). Therefore, the Court finds the listening sessions along with the several other alternative means of communication presented by Defendant are adequate and support the Court's finding the Restriction is reasonable.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment, (Doc. 32), is DENIED and Defendant's Motion for Summary Judgment, (Doc. 33), is GRANTED. The Clerk is DIRECTED to enter Judgment and terminate the case.

ENTER: 9/30/2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE